USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/01/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOCELYN MOISE,

        Plaintiff,

v.

FAMILY DOLLAR STORES OF NEW YORK, INC. and FAMILY DOLLAR SERVICES, INC.,

        Defendants.

No. 16-CV-6314 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Jocelyn Moise brings this action against his former employer, Defendants Family Dollar Stores of New York, Inc. and Family Dollar Services, Inc. (collectively, "Family Dollar"), under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Family Dollar moves to compel arbitration and to stay these proceedings. For the reasons set forth below, Family Dollar's motion is granted, and this action is stayed.

## BACKGROUND

From approximately July 2013 through June 2016, Moise worked as a "store supervisor/shelf-stocker" at a Family Dollar store in the Bronx. *See* Compl. ¶¶ 7, 22–23 (Dkt. 3). Moise alleges that he worked an average of ninety hours per week without receiving overtime compensation. *See id.* ¶¶ 30, 32. On August 9, 2016, Moise filed a complaint in this action, claiming that Defendants violated the overtime provisions of the FLSA and the NYLL. *See id.* ¶¶ 34–39.

On September 26, 2016, Family Dollar moved to compel arbitration. *See* Mot. to Compel Arbitration (Dkt. 12). Family Dollar claims that it provides its employees an online training

program known as Family Dollar University ("FDU"), which includes a course titled "Open Door & Arbitration at Family Dollar." *See* Decl. of Matthew Broel in Supp. of Mot. to Compel Arbitration ¶¶ 4, 8, Ex. A (Dkt. 16). This online training course presents several slides and, ultimately, an arbitration agreement titled "Mutual Agreement to Arbitrate Claims" (the "Agreement"). *See id.* ¶¶ 9–11, Exs. A, B.

The Agreement provides: **"All disputes covered by this Agreement between me and [Family Dollar] shall be decided by an arbitrator through arbitration and not by way of court or jury trial**." Broel Decl. Ex. B at 1(boldface in original). Under a section titled **"DISPUTES COVERED BY THE AGREEMENT**," the Agreement states: "[Family Dollar] and I mutually consent and agree to the resolution by arbitration of all claims or controversies, past, present, or future . . . including without limitation, claims arising out of or related to my . . . assignment/employment." *Id.* (boldface in original). "Further," the agreement continues, "covered Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Agreement or any portion of the Agreement is void or voidable." *Id.* The agreement then lists a number of claims that qualify as covered disputes, including claims under "all employment related laws, including, but not limited to . . . the Fair Labor Standards Act . . . and any such related or similar state or local laws." *Id.*[1]

---

[1] The Agreement states that it "it is between [the employee] and Family Dollar, Inc. (the 'Company')." Broel Decl. Ex. B. The Agreement further provides that "[a]ny reference to Company will be a reference also to Company's parents, subsidiaries, partners, divisions, and affiliated entities, and all successors and assigns of any of them." *Id.* Moise has named Family Dollar Stores of New York, Inc. and Family Dollar Services, Inc. as defendants. Moise does not argue that these named defendants are not parties to the Agreement. Accordingly, the Court assumes that the Family Dollar entities named as defendants in this action fall within the Agreement's definition of "Company" and are thus parties to the Agreement.

A signature line appears at the end of the Agreement. *See id.* Above the signature line, the Agreement reads:

> **BY CLICKING THE "I ACCEPT" BUTTON OR SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

*Id.* at 3 (capitalization and boldface in original). If the employee has both downloaded and viewed the Agreement, he may then click a checkbox labeled "I ACCEPT" in the online training program. *See* Broel Decl. ¶ 14, Ex. A. Below this checkbox, the following text appears:

> **AGREEMENT**
>
> By clicking "I Accept", I acknowledge that I have carefully read and understand this agreement and agree to its terms. I agree that through this agreement, the company and I are giving up our rights to a jury trial and that pursuant to the terms of this agreement, we are agreeing to arbitrate disputes covered by this agreement. I further understand and agree to the use of electronic method of signature to demonstrate my acceptance and agreement to the terms of the agreement.

Broel Decl. Ex. A (boldface in original). Below this text is another "I ACCEPT" checkbox. *See id.*

Family Dollar's system automatically records the date and time on which an employee completes the online training portal. *See* Broel Decl. ¶ 17. Family Dollar's records indicate that Moise received, reviewed, and acknowledged the Agreement on September 28, 2013. *See id.* ¶ 19, Ex. C. In addition, a record of Moise's "Learning History" lists the status of the "Open Door and Arbitration at Family Dollar" course as "COMPLETE," and includes a comment that reads, "Completion noted in FDU on October 11, 2013." *Id.* ¶ 20, Ex. D.

On October 10, 2016, Moise filed an opposition to Family Dollar's motion to compel

3

arbitration, accompanied by a personal declaration. *See* Pl.'s Opp'n Mem. (Dkt. 18); Moise Decl. (Dkt. 17). In his declaration, Moise states that he does not "recall receiving or reviewing the Open Door Guidelines and/or Arbitration Agreement on September 28, 2013 or at any time thereafter prior to my termination." Moise Decl. ¶ 35. Moise also states that, even if he did access the agreement, he believes he "had no choice but to accept the terms without a full and complete understanding of the implications of the agreement because it was a computer program that required [him] to click on the screen to continue to access the next screen and that [he] had no other choice but to agree to the terms if [he] wished to continue employment with defendants." *Id.* ¶ 37. On October 17, 2017, Family Dollar filed a reply. *See* Defs.' Reply Mem. (Dkt. 19).

## LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted to "revers[e] centuries of judicial hostility to arbitration agreements," *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991) (citation omitted), the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (alteration omitted) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). "But the FAA 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Schnabel*, 697 F.3d at 118); *accord AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation

4

omitted)).

Under the FAA, a party to an arbitration agreement may petition a district court for "an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, [a district court] must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 408–09 (S.D.N.Y. 2016) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel*, 697 F.3d at 119.[2]

"In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citations omitted).

## DISCUSSION

### A. Existence of an Arbitration Agreement

In opposing Family Dollar's motion, Moise first argues that there is no arbitration agreement for the Court to enforce. Specifically, Moise argues that he never entered into an arbitration agreement because: (1) he does not recall receiving or reviewing the Agreement, (2) he

---

[2] The parties do not dispute that New York law governs this agreement.

5

did not read or fully understand the any arbitration agreement he may have signed, and (3) to the extent that he signed any arbitration agreement, he did so under "economic duress or coercion." *See* Pl.'s Opp'n Mem. at 5–9. These arguments fail.

First, Moise's claim that he does not "recall" receiving the Agreement does not create a genuine dispute as to whether he signed it. It is well-established that a "mere assertion that one does not *recall* signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated." *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (emphasis in original); *see also, e.g.*, *Vardanyan v. Close-Up Int'l, Inc.*, 315 F. App'x 315, 317–18 (2d Cir. 2009) (summary order) (holding that a plaintiff's "statement that he does not remember whether he signed the document does not conflict with the testimony and evidence that defendants have submitted about the terms of that agreement"). Moise does not claim that he did not sign the Agreement, instead asserting that he "do[es] not recall receiving or reviewing" it. Moise Decl. ¶ 35. Family Dollar, however, has submitted a record of the date and time on which Moise "received, reviewed, and acknowledged" the Agreement through its online training program. *See* Broel Decl. ¶ 17, 19, Ex. C.[3] Moise does not argue that this record is fabricated or inaccurate. Instead, he argues that the record could have provided even more information, including "whether the links preceding the checkboxes were accessed at a certain time and date during the online training session" and "when the online training session was first accessed." Pl.'s Opp'n Mem. at

---

[3] Family Dollar submitted several other records indicating that Moise did, in fact, receive and review the agreement, including a note in his "Learning History," *see* Broel Decl. ¶ 20, Ex. D, and a record that Moise used his unique employee identification number to mark the task of reviewing the Open Door and Arbitration training program as complete, *see* Decl. of Natalie Neely in Supp. of Mot. to Compel Arbitration ¶ 7, Ex. D (Dkt. 20).

8. But even without these details, the report undisputedly demonstrates that Moise "reviewed and accepted" the Agreement in the online training portal. *See* Broel Decl. Ex. C. Accordingly, the fact that Moise does not recall receiving the Agreement does not demonstrate the existence of any genuine dispute as to whether he signed it. *See, e.g.*, *Gonder*, 144 F. Supp. 3d at 528 (finding no dispute of fact as to whether an employee signed an arbitration agreement based on records of that the employee accessed an electronic portal containing hiring paperwork, created a unique password for use in signing the documents, and signed the agreement using this password, where the employee alleged that he did not recall signing the documents); *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678 (CM), 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015) (finding that parties' assertions that "they 'do not recall' signing an arbitration agreement," without more, "are insufficient to challenge the existence of the agreements"); *Padro v. Citibank, N.A.*, No. 14-CV-2986 (NGG), 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015) ("[I]t is not relevant, for purposes of [a motion to compel arbitration], whether Plaintiff recalls signing documents acknowledging the Employment Arbitration Policy, or whether she subjectively understood at the time the contents thereof.").

Second, Moise's claim that he did not read or fully understand the Agreement does not demonstrate a genuine dispute as to the formation of an arbitration agreement. Under New York law, "[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." *Brandywine Pavers, LLC v. Bombard*, 970 N.Y.S.2d 653, 655 (1st Dep't 2013) (alterations in original) (quoting *Cash v. Titan Fin. Servs., Inc.*, 873 N.Y.S.2d 642, 645 (2d Dep't 2009)); *see also, e.g.*, *Kai Peng v. Uber Techs., Inc.*, No. 16-CV-545 (PKC) (RER), 2017 WL 722007, at *9 (E.D.N.Y. Feb. 23, 2017) (under New York law, "failure to read a contract is not a

7

defense to contract formation"); *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 565 (S.D.N.Y. 2016) ("[U]nder New York law, a party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract." (alteration omitted) (internal quotation marks omitted)), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016) (unpublished), *cert. denied*, 137 S. Ct. 1096 (2017); *Pig Newton, Inc. v. Bds. of Dirs. of Motion Picture Indus. Pension Plan*, 95 F. Supp. 3d 366, 379 (S.D.N.Y. 2015) (under New York law, a "person who signs an agreement is conclusively bound by it even if he did not read the agreement or understand its terms" (citation omitted)), *aff'd*, No. 15-1029, 2017 WL 1087852 (2d Cir. Mar. 21, 2017). Thus, Moise's "contention that [he] did not read the entire Arbitration Agreement, by itself, does not create a material factual dispute." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014).

Third, Moise cannot avoid the binding effects of the Agreement by asserting that he signed it "under economic duress and coercion." Pl.'s Opp'n Mem. at 6. Under New York law, the defense of economic duress or coercion is "reserved for extreme and extraordinary cases, where the party asserting economic duress can show (1) threats of an unlawful act by one party that (2) compel performance by the other party of an act that it had a legal right to abstain from performing." *Adler v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*), 855 F.3d 459, 477 (2d Cir. 2017) (alterations omitted) (internal quotation marks omitted). "However, 'the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'" *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (quoting *DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 633–34 (2d Cir. 1982)); *accord United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011). "A party may ratify a contract or release entered into under duress by 'intentionally accepting benefits under the contract,' by 'remaining silent or acquiescing in the contract for a period of time after he has the

8

opportunity to avoid it,' or by 'acting upon it, performing under it, or affirmatively acknowledging it.'" *VKK Corp.*, 244 F.3d at 123 (quoting *In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir. 1989)). Here, Moise signed the arbitration agreement in September 2013, *see* Broel Decl. ¶ 19, Ex. C, but continued working at Family Dollar until June 2016, *see* Moise Decl. ¶ 3. Moise does not claim that he repudiated the Agreement at any point during this period, and he has offered no explanation for remaining silent for nearly three years. *See VKK Corp.*, 244 F.3d at 123 (noting that "[d]elays as short as six months have been held to constitute forfeiture of the claim" of economic duress). Moise is thus deemed to have affirmed the agreement and cannot avoid the binding effects of its terms under the doctrine of economic duress or coercion.

## B. Unconscionability

Moise next argues that the arbitration agreement is unconscionable under New York law. *See* Pl.'s Opp'n Mem. at 9–11. This argument is for the arbitrator to decide.

It is well-established that, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at 445–46; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court applied these principles to so-called "delegation provisions" within arbitration agreements. The Court held that, when an arbitration agreement contains a provision granting the arbitrator the exclusive authority to decide claims related to arbitrability—including, for example, claims of unconscionability—the "precise agreement to arbitrate at issue" is this delegation provision itself, even though it is nested within a broader arbitration agreement. *Id.* at 71–72. Thus, if a party challenges the validity of the arbitration agreement as a whole but does

9

not "challenge[] the delegation provision specifically," a court must enforce the delegation provision, "leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 72.

Under *Rent-A-Center*, Moise's unconscionability claim is for the arbitrator to decide. The Agreement provides that "any claim or controversy regarding the Agreement['s] . . . unconscionability" shall be "decided by an arbitrator through arbitration and not by way of court or jury trial." Broel Decl. Ex. B (boldface omitted). This provision plainly delegates a claim of unconscionability to the arbitrator. Moise did not, however, direct his unconscionability claim to the delegation provision specifically—indeed, Moise's opposition brief does not mention the delegation provision at all. *See* Pl.'s Opp'n Mem. at 9–12. Moise's failure to direct his attack at the delegation provision is particularly striking because, while his brief quotes from other sections of the Agreement, *see id.* at 10, it is the delegation provision that specifically addresses the "unconscionability" argument he advances here, Broel Decl. Ex. B. Because Moise's unconscionability claim falls within a provision delegating this claim to the arbitrator, and because Moise did not specifically challenge this provision, the Court must enforce the delegation provision and refer the question of unconscionability to the arbitrator. *See Rent-A-Center*, 561 U.S. at 71–72; *see also, e.g., Philippe v. Red Lobster Rests. LLC*, No. 15-CV-2080 (VEC), 2015 WL 4617247, at *4 (S.D.N.Y. Aug. 3, 2015) (granting a motion to compel arbitration where the opposing party did not challenge a delegation provision that "plainly encompass[ed]" his claim).

**C. Stay**

The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015), the Second

Circuit held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." 794 F.3d at 347. Since the Court has determined that all claims in this action should be referred to arbitration and since Family Dollar has requested a stay, this action will be stayed.

## CONCLUSION

For the foregoing reasons, Family Dollar's motion to compel arbitration and to stay these proceedings is granted, and this action is stayed.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 12.

SO ORDERED.

Dated: June 1, 2017
New York, New York

Ronnie Abrams
United States District Judge